NO. 22-13097-HH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff/appellee,*

v.

MARVIN GREEN,
*Defendant/appellant.*

On Appeal from the United States District Court
for the Southern District of Florida

BRIEF OF THE APPELLANT
MARVIN GREEN

MICHAEL CARUSO
Federal Public Defender
IAN MCDONALD
Assistant Federal Public Defender
Attorney for Appellant Green
150 West Flagler Street, Suite 1700
Miami, Florida 33130-1555
Telephone No. (305) 530-7000

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

### United States v. Marvin Green
### Case No. 22-13097-HH

Appellant Marvin Green files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Caruso, Michael

Egozi, Joseph

Fajardo Orshan, Ariana

Gonzalez, Juan Antonio

Green, Marvin

Klco Sara

Louis, Hon. Lauren Fleischer

McDonald, Ian

Moore, Hon. K. Michael

Otazo-Reyes, Hon. Alicia M.

Rubio, Lisa Tobin

Silverstein, Joan A.

United States of America

## STATEMENT REGARDING ORAL ARGUMENT

Because this case presents important issues regarding interpretation of application notes to a sentencing guidelines enhancement that can add years to a defendant's sentence, as well as this Court's *Keene*-finding jurisprudence, Mr. Green respectfully submits that oral argument is necessary to the just resolution of this appeal, and will significantly enhance the decision-making process.

## TABLE OF CONTENTS

Certificate of Interested Persons .......................................................... C-1

Statement Regarding Oral Argument ....................................................... i

Table of Authorities................................................................................ iv

Statement of Jurisdiction........................................................................ 1

Statement of the Issues........................................................................... 2

Statement of the Case.............................................................................. 3

    Statement of Facts and Course of Proceedings and Disposition in
    the District Court ............................................................................ 4

Standards of Review.............................................................................. 13

Summary of the Argument ................................................................... 14

Argument and Citations of Authority.................................................... 15

    I.    The District Court Erred In Applying a Four-Level
        Enhancement Under U.S.S.G. § 2K2.1(b)(6)(B) "Because
        the Defendant Used or Possessed Any Firearm or
        Ammunition in Connection with Another Felony Offense"
        – The Evidence Does Not Support Such a Finding................... 15

    II.   The District Court Made An Invalid *Keene* Finding, And
        Therefore, Any Guidelines Error Could Not Be Harmless....... 20

Conclusion ............................................................................ 26

Certificate of Compliance ..................................................... 27

Certificate of Service ............................................................ 28

# TABLE OF AUTHORITIES

**CASES:**

*Green v. United States*,

    365 U.S. 301 (1961) ................................................................ 23

*United States v. Cubero*,

    754 F.3d 888 (11th Cir. 2014) ............................................... 22

*United States v. Doyle*,

    857 F.3d 1115 (11th Cir. 2017) ............................................. 23

*United States v. Gomez-Jimenez*,

    750 F.3d 370 (4th Cir. 2014) ................................................. 25

*United States v. Keene*,

    470 F.3d 1347 (11th Cir. 2006) .................................... *passim*

*United States v. Plasencia*,

    886 F.3d 1336 (11th Cir. 2018) ............................................. 13

*United States v. Prouty*,

    303 F.3d 1249 (11th Cir. 2002) ....................................... 22, 23

*United States v. Richardson*,

    787 F. App'x 1015 (11th Cir. 2019) ...................................... 18

*United States v. Rosales-Bruno,*

   789 F.3d 1249 (11th Cir. 2015) ...........................................22

*United States v. Turner,*

   626 F.3d 566 (11th Cir. 2010) .............................................13

*United States v. Wooten,*

   253 F. App'x 854 (11th Cir. 2007) ......................................18

## STATUTES

18 U.S.C. § 3231 .....................................................................1

18 U.S.C. § 3553(a) ......................................................... *passim*

18 U.S.C. § 3742 .....................................................................1

18 U.S.C. § 922(g)(1)...........................................................3, 5

28 U.S.C. § 1291 .....................................................................1

U.S.S.G. § 1B1.3 ..................................................................19

U.S.S.G. § 2K2.1 cmt. n.14(A)...................................6, 7, 15, 16

U.S.S.G. § 2K2.1 cmt. n.14(B)................................................16

U.S.S.G. § 2K2.1, cmt. n.14(B)(i) ............................................7

U.S.S.G. § 2K2.1 cmt. n.14(E)...............................................19

U.S.S.G. § 2K2.1(b)(6)(B) ................................................ *passim*

## STATEMENT OF JURISDICTION

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231 because the defendant was charged with an offense against the laws of the United States. The court of appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which give the courts of appeals jurisdiction over all final decisions and sentences of the district courts of the United States. The appeal was timely filed on September 12, 2022, (*United States v. Green*, No. 22-cr-20078-KMM (S.D.FL) Docket Entry ("DE") 33), from the final judgment and commitment entered on August 30, 2022 (DE 31), which disposes of all claims between the parties to this cause.

## STATEMENT OF THE ISSUES

I.    **Whether the District Court Erred by Applying a Four-Level Enhancement "Because the Defendant Used or Possessed Any Firearm or Ammunition in Connection with Another Felony Offense" Where the Other Felony Was a Wholly Unrelated Burglary Committed Two Days Prior to the Instant Offense.**

II.    **Whether the District Court's Making an Invalid *Keene* Finding After Miscalculating the Advisory Guidelines Range Requires Vacatur of the Sentence and a Remand for Resentencing.**

## STATEMENT OF THE CASE

Mr. Green pled guilty to one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He appeals the district court's application of a four-level enhancement under United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(b)(6)(B) "because the defendant used or possessed any firearm or ammunition in connection with another felony offense," where that felony was a truck burglary committed two days prior and completely unconnected to the offense conduct in this case. Mr. Green also appeals the validity of the district court's pronouncement – before it took up the other objections interposed by Mr. Green, considered any of the 18 U.S.C. § 3553(a) factors, or heard Mr. Green's allocution – that even if it erred in applying the enhancement, it would "nonetheless" impose "the same sentence post-appeal as a reasonable sentence."

Mr. Green was the defendant in the district court and will be referred to by name or as the appellant. The respondent-appellee, United States of America, will be referred to as the Government. The record will be noted by reference to the document number, as set forth in the docket sheet, followed by the page number.

3

## Statement of Facts and Course of Proceedings in the District Court

On December 24, 2021, a City of Miami police sergeant observed Mr. Green riding his bike while carrying two backpacks. (DE 29 (Final Presentence Investigation Report ("PSI")) ¶ 7.) He recognized Mr. Green because there was an outstanding warrant for his arrest. (PSI ¶ 7.) The sergeant and backup officers arrested Mr. Green, searched the backpacks, and in one of them found a zippered pouch containing a 9mm firearm, 20 rounds of ammunition, and a set of car keys. (PSI ¶ 7.)

Law enforcement confirmed that the backpack, zippered pouch, firearm, and ammunition had been reported stolen from a truck two days earlier – on December 22, 2021 – while it was parked at a public storage facility in Miami. (PSI ¶ 8.)

Officers obtained video surveillance from the storage facility, which depicted someone resembling Mr. Green biking around the truck at the time of the reported burglary. (PSI ¶ 8.) The video showed the individual circling the truck without a backpack, then biking outside of the surveillance frame before reappearing in a different video a short time later carrying a backpack. (PSI ¶ 8.)

Law enforcement made contact with the victim of the truck burglary who provided a receipt for the firearm. (PSI ¶ 9.) Additionally, the victim was shown photographs of other items found in Mr. Green's possession on the day of his arrest. (PSI ¶ 9.) The victim positively identified the backpack, zippered pouch with the firearm and ammunition, and the car keys as items stolen from his truck on December 22, 2021, two days before Mr. Green's arrest. (PSI ¶ 9.)

On March 3, 2022, federal prosecutors filed the indictment in the instant case, charging Mr. Green with a single count of possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). On May 23, 2022, pursuant to a written plea agreement, Mr. Green pled guilty to the sole count in the indictment.

After the change of plea hearing, the United States Probation Office ("Probation") prepared its Draft Presentence Investigation Report (DE 24 ("Draft PSI").) In it, Probation applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) "[b]ecause the defendant used or possessed any firearm or ammunition in connection with another felony offense ([the] burglary of the truck [on December 22, 2022])." (Draft PSI ¶ 18.)

5

Mr. Green filed written objections to Probation's application of the § 2K2.1(b)(6)(B) enhancement, noting that he "was convicted of a single count of possession of a firearm and ammunition by a convicted felon on or about December 24, 2021 (the day of his arrest)" and that possession of the firearm on that day could not have "'facilitated, or had the potential of facilitating'" a burglary committed two days earlier, on December 22, 2020." (DE 25:3 (citing U.S.S.G. § 2K2.1 cmt. n.14(A)).) Mr. Green continued: "[the notion that [his] possession of the firearm on [the] day [of his arrest] could somehow "facilitate[ ], or ha[ve] the potential of facilitating" a truck burglary committed two days earlier . . . simply defies time and logic." (DE 25:3.)

The Government filed a response defending the enhancement, asserting that '[t]here is a clear 'connection' between theft of a gun and the subsequent possession of that gun." (DE 28:4 (case citations omitted).) In support of its argument, the Government cited a separate application note: "Subsection[] (b)(6)(B) applies in a case in which a defendant who, during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with

that firearm during the course of the burglary." (DE 28:4 (citing U.S.S.G. § 2K2.1, cmt. n.14(B)(i)).)

On August 30, 2022, the district court held a sentencing hearing. (DE 38.) The first issue it took up was Mr. Green's objection to the four-level § 2K2.1(b)(6)(B) enhancement. (DE 38:3-10.) Defense counsel pointed out that the commentary to U.S.S.G. § 2K2.1(b)(6)(B) provides that the enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, [the] felony offense." (DE 38:10 (citing U.S.S.G. § 2K2.1 cmt. n.14(A)).) The defense further noted that as the instant offense occurred on December 24, 2021, "there's no way that the firearm could have facilitated that offense." (DE 38:3.) Defense counsel acknowledged: "Now, I understand that in the course of a burglary if someone takes a firearm and is then arrested there on that day during the course of the burglary the firearm could facilitate it. But here, Mr. Green was arrested days after this burglary. There's absolutely no way it could have facilitated it." (DE 38:3.)

Defense counsel summed up Mr. Green's argument as follows:

[Mr. Green] was arrested on December 24th with the gun, and that's the date in the indictment. This truck burglary happened two days prior. In the PSI, this four-level enhancement is being applied by Probation saying that he should receive a four-level

enhancement for use of the firearm in furtherance of another felony. This other felony would have occurred two days prior. He's riding around on a bicycle in our case with a firearm in the backpack. His possession of the firearm, as charged in the indictment here, did not facilitate that burglary. Had he been arrested during the commission of that burglary with the firearm and had taken it, I agree the four-level enhancement would count. Here, according to the logic behind this, he could basically have stolen a firearm, be arrested with that same firearm six months later, for instance, and then he would be enhanced for possession of a firearm in furtherance with a burglary committed on a prior occasion. And I'll point out that not a single case cited by the Government actually supports the principle that this enhancement would apply to somebody subsequent to the date of a commission of a burglary.

. . . .

The guidelines allude to [the context of] a burglary. In Application Note 14(B), it says [that a] defendant who, during the course of a burglary, finds and takes a firearm . . . is using it in connection with [the burglary]. During the course of a burglary, [if] a defendant gets a gun, steals it during the burglary, absolutely, they have the ability to use that gun to facilitate that burglary. Once the burglary has been completed, day two, day three, day four, six months later, their possession of that firearm is no longer facilitating that burglary nor could it possibly.

(DE 38:6-8.)

In response, the Government stated:

So [defense counsel] keeps saying "in furtherance", "facilitating", all of these words that are not in the text of the actual enhancement itself. The enhancement says that the gun possession must be, quote, in connection with another felony offense. And I don't understand how [defense counsel] can say that somebody who burglarizes a truck, steals a gun and then continues to possess it

and is arrested two days later hasn't possessed that gun in connection with his own theft of the gun.

And the second point that's important to note, if we focus on the Application Note 14(B) which is specific to this exact scenario, it doesn't talk about when a defendant is arrested. When a defendant is arrested has no bearing on the case at all. Yes, [defense counsel] is right, it says in the course of a burglary gains possession of the firearm. How is that not exactly what we have here? Now granted, there is another application note that talks about the potential to facilitate and there is a strand of case law in the Eleventh Circuit that would say in that scenario, yeah, we would apply this fact pattern. But that doesn't mean that's a necessary condition to finding that this gun possession was in connection with another felony, and the Richardson case is spot on that I cite in my response. He goes to a farm, burglarizes it, steals a gun, and then they arrest him with that gun. Now, I see no distinction between arresting him two minutes after the burglary and two days after the burglary. The fact of the matter is if you look at the text of the enhancement which is in connection with another felony, that's exactly what we have here. We have a defendant who possessed a stolen gun that he himself stole two days prior, so the possession is connected to that burglary.

(DE 38:8-9.)

The defense countered that:

What the Government is trying to do here is take the language . . . of the enhancement ("in connection with") and then discuss that completely separately from the application note which is . . . provided by the Sentencing Commission to describe when enhancements apply. And the application note, Application Note 14(A) when it's describing what "in connection with" means, it says if it facilitated or had the potential of facilitating another felony offense.

(DE 38:9-10.)

9

Following this exchange, the district court announced its decision in summary fashion, overruling Mr. Green's objection:

> Okay. Well, I think first of all we have to start with the text of the guideline provision itself. The commentary is informative, it's certainly not controlling. It posits different – there are different commentary notes that posit different situations. So I think if there's no further argument on that, I'm satisfied that the Probation Office has correctly applied the enhancement. And I'll overrule the objection.

(DE 38:10.)

The court then immediately proceeded to try and insulate its summary ruling from appellate review:

> Let me also say now for appellate review purposes in the event this issue is taken up on appeal, that in view of the fact of this objection and the Court's ruling on it, the Court would nonetheless impose a reasonable sentence as an alternative that is consistent with the Court's imposition of sentence under the guidelines so that in the event, if for some reason that I have been found to be wrong, you have the benefit of knowing that and the Circuit has the benefit of knowing that the Court would impose the same sentence post-appeal as a reasonable sentence nonetheless.

(DE 38:10.)

Following this, the district court took up Mr. Green's additional objections, sustaining an objection to the base offense level and overruling an objection to the applicable number of criminal history points. (DE 38:11-16.) After these rulings, the court calculated an

10

advisory guidelines range of 70 to 87 months, based on a total offense level of 23 and a criminal history category of IV. (DE 38:16-17.) Had the district court sustained Mr. Green's objection to the § 2K2.1(b)(6)(B) enhancement, the total offense level would have become 19, and the advisory guidelines range would have been 46 to 57 months.

After it's calculation of the guidelines, the court heard Mr. Green's allocution as well as argument from the parties concerning the 18 U.S.C. § 3553(a) factors. (DE 38:17-20.) Mr. Green and the Government sought sentences at the low end (70 months) and high end (87 months) of the as-calculated guidelines range, respectively. (DE 38:18-19.)

After the parties' presentations, the district court sentenced Mr. Green to 100 months' imprisonment – a sentence 13 months above the high end of the guidelines range calculated by the court and 53 months above what the high-end would have been had the court sustained Mr. Green's objection to the § 2K2.1(b)(6)(B) enhancement. (DE 38:22.) In explaining its sentence, the court pointed to Mr. Green's relatively young age vis-à-vis his criminal history category, his history of mental health issues, the violent nature of some of his prior offenses, and the need for general and specific deterrence. (DE 38:21-22.)

11

At the conclusion of the sentencing hearing, when asked if the defendant or counsel objected to the court's findings of fact or to the manner in which sentence was pronounced, counsel for Mr. Green preserved his objection to the district court's application of the § 2K2.1(b)(6)(B) enhancement and objected to the reasonableness of the sentence. (DE 38:23.)

This appeal follows.

Mr. Green is incarcerated.

## STANDARD OF REVIEW

For sentencing issues, the Court reviews factual findings for clear error and application of the Guidelines *de novo*. *United States v. Plasencia*, 886 F.3d 1336 (11th Cir. 2018). "The Government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement." *United States v. Turner*, 626 F.3d 566, 572 (11th Cir. 2010).

## SUMMARY OF THE ARGUMENT

The district court erred by applying a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because the defendant "used or possessed any firearm or ammunition in connection with another felony offense." Here, the other felony offense at issue was a truck burglary – committed two days prior to Mr. Green's unrelated arrest in this case – in which the charged firearm and ammunition were stolen. For the § 2K2.1(b)(6)(B) to apply, the firearm or ammunition must have "facilitated, or had the potential of facilitating, [the other] felony offense." Because Mr. Green's possession of the firearm and ammunition in this case did not facilitate – nor could it possibly have had the potential to facilitate – a burglary that was already completed two days prior, the district court erred by applying the § 2K2.1(b)(6)(B) enhancement.

Additionally, the district court made an invalid *Keene* finding that cannot serve to protect its sentencing error from reversal and remand.

## ARGUMENT AND CITATIONS OF AUTHORITY

**I.   THE DISTRICT COURT ERRED IN APPLYING A FOUR-LEVEL ENHANCEMENT UNDER U.S.S.G. § 2K2.1(B)(6)(B) "BECAUSE THE DEFENDANT USED OR POSSESSED ANY FIREARM OR AMMUNITION IN CONNECTION WITH ANOTHER FELONY OFFENSE" – THE EVIDENCE DOES NOT SUPPORT SUCH A FINDING.**

The Sentencing Guidelines provide for a four-level increase to a defendant's base offense level if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). More specifically, the enhancement applies if the firearm or ammunition "facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1 cmt. n.14(A).

At Mr. Green's sentencing, though, the Government argued (and the district court apparently agreed) that this clarifying language from Application Note 14(A) should simply be ignored: "So [defense counsel] keeps saying "in furtherance", "facilitating", all of these words that are not in the text of the actual enhancement itself. The enhancement says that the gun possession must be, quote, in connection with another felony offense." (DE 38:6-8.)

Notwithstanding the supposed need for focus only on the "text of the actual enhancement," in its next breath, the Government pointed to

a different application note, which states the enhancement applies "in a case in which a defendant who, during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary." (*See* DE 38:8-9 (citing U.S.S.G. § 2K2.1 cmt. n.14(B)).)

Both application notes are obviously instructive, and the Government's (and district court's) selective reliance only on Note 14(B) here is improper. Read holistically – as they should be – the text of § 2K2.1(b)(6)(B) itself, the application notes, as well as principles of logic and fundamental fairness demonstrate that the district court should not have applied the enhancement in this case.

The application notes are clear: "in connection with" means what it sounds like: that the firearm must have "facilitated, or had the potential of facilitating" the other felony. U.S.S.G. § 2K2.1 cmt. n.14(A). And to be sure, as Mr. Green acknowledged below, (*see* DE 38:7) in the context of a burglary, "find[ing] and tak[ing]" a firearm "during the course of [that] burglary" can facilitate it. *See* U.S.S.G. § 2K2.1 cmt. n.14(A). To this point, one can certainly envision a defendant acquiring a firearm during a burglary and potentially using it to thwart capture, effectuate an

escape, or otherwise "facilitate" carrying out the crime. But that is not what happened here. Mr. Green's possession of the gun at the time he was arrested (the basis for the felon in possession charge in this case) could not possibly have facilitated a burglary completed two days earlier – a temporal impossibility.

The Government advanced the principle (now unfortunately manifested in the district court's decision below) that "[w]hen a defendant is arrested has no bearing on the case at all" and that there is "no distinction between arresting him two minutes after the burglary and two days after the burglary." (*See* DE 38:9.)

But there *is* a distinction. Mr. Green was arrested for the instant offense – being a felon in possession– on December 24, 2021. Nothing about his possession of the firearm at that time could possibly have had the potential to facilitate an already-completed burglary days prior. In contrast, and as described above, when a defendant takes and possesses a firearm during a burglary, that firearm *does* have the potential to facilitate that burglary. At some point, though, a burglary is completed, and the stolen firearm no longer has the potential to "facilitat[e] it."

17

By the Government's (and now the district court's) reasoning, if a defendant took a gun during a burglary and was subsequently arrested for possessing it as a felon a year later – two years later, ten years later, twenty years later – does the defendant still possess it "in connection with" that burglary? The answer must surely be no.

Tellingly, none of the cases the Government cited that apply the § 2K2.1(b)(6)(B) enhancement reach such a sweeping, zero-limiting-principle conclusion. In each of them, the defendant was caught and arrested during – or immediately after – commission of the crime. *See United States v. Richardson*, 787 F. App'x 1015 (11th Cir. 2019) (defendant arrested at scene of burglary of firearms and ammunition); *United States v. Wooten*, 253 F. App'x 854, 858 (11th Cir. 2007) (defendant arrested after police discovered a shotgun in his trunk next to quantity of marijuana).

Application Note 14(E) cites an example closer to what the Government has tried to advance here – *i.e.*, that "ordinarily" the enhancement applies where "Defendant A's offense of conviction is for unlawfully possessing a shotgun on October 15" and "[t]he court determines that, on the preceding February 10, Defendant A used the

shotgun in connection with a robbery." *See* U.S.S.G. § 2K2.1 cmt. n.14(E). But this is because "[o]rdinarily, the unlawful possession of the shotgun on February 10 will be 'part of the same course of conduct or common scheme or plan' as the unlawful possession of the same shotgun on October 15." *See* U.S.S.G. § 2K2.1 cmt. n.14(E) (pointing to "same course of conduct"/"common scheme or plan" factors discussed in Application Note 5(B) to § 1B1.3.)

No such factors are present here. In fact, even assuming *arguendo* that Mr. Green committed the burglary, there is no evidence that he even knew the gun was present in the backpack when it was stolen. Surveillance footage allegedly showed him "circling the truck without a backpack, then biking outside of the surveillance frame before reappearing in a different surveillance video a short time later carrying a backpack." (See PSI ¶ 8.) It is not clear that Mr. Green ever opened the backpack during the burglary and observed the gun – particularly as both it and the ammunition were located not only inside a zipped-up backpack but also inside a "zippered pouch" within it. (*See* PSI ¶¶ 7, 8.) And it would not make sense for someone who stole a backpack from a truck to wait around at the scene of the crime to inspect its contents.

19

In short, Mr. Green is charged with a single count of unlawfully possessing a firearm and ammunition *on December 24, 2021*. His possession of the firearm and ammunition *in this case* did not facilitate – nor could it possibly have had the potential to facilitate – a burglary that was already completed two days prior, particularly when there is no evidence he even knew there was a gun in the backpack when it was stolen. The district court erred by applying the four-level § 2K2.1(b)(6)(B)enhancement.

## II. THE DISTRICT COURT MADE AN INVALID KEENE FINDING AND THEREFORE, ANY GUIDELINES ERROR COULD NOT BE HARMLESS.

Right at the very start of the sentencing hearing, after only considering the issue of the § 2K2.1(b)(6)(B) enhancement and before hearing argument from the parties regarding the other various objections and their positions pursuant to § 3553(a) – and before hearing from Mr. Green himself – the district court announced:

> Let me also say now for appellate review purposes in the event this issue is taken up on appeal, that in view of the fact of this objection and the Court's ruling on it, the Court would nonetheless impose a reasonable sentence as an alternative that is consistent with the Court's imposition of sentence under the guidelines so that in the event, if for some reason that I have been found to be wrong, you have the benefit of knowing that and the Circuit has the benefit of

> knowing that the Court would impose the same sentence
> post-appeal as a reasonable sentence nonetheless.

(DE 38:10.) Such a premature statement is not in keeping with this Court's reasoning in *United States v. Keene*, 470 F.3d 1347 (11th Cir. 2006), and cannot be used to insulate the district court's sentencing error from review.

In *Keene*, this Court established its standard for "assumed error harmlessness review." 470 F.3d at 1349. There, the district court reviewed and overruled Mr. Keene's objections to his PSI, found what it believed to be the appropriate guidelines range, considered the § 3553(a) factors, pronounced sentence, and then noted that "even if the guideline calculations are wrong, my application of the sentencing factors under Section 3553(a) would still compel the conclusion that a 10-year sentence is reasonable and appropriate under all the factors that I considered." *Id.* This Court sanctioned such a practice, but only because the district court had made clear that the sentence imposed would remain the same even "after the § 3553(a) factors are considered." *Id.*

What occurred here, however, stretches *Keene* beyond even its broadest boundaries. The district court made its "*Keene*" finding before considering any of the factors courts are required to consider when

fashioning a sentence. Properly calculating the guidelines is the beginning of the sentencing court's responsibility, but it is not the end. Before imposing sentence, the court must consider all of the sentencing factors outlined in 18 U.S.C. § 3553(a) and must ultimately fashion a sentence that is "sufficient, but not greater than necessary" to serve the purposes of punishment. 18 U.S.C. § 3553(a). This is a "holistic" process that requires consideration of the specific individual before the court, and therefore requires the court to hear from the parties about the individual facts and circumstances of the case before pronouncing a sentence. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). Although the court has considerable discretion in how to weigh the § 3553(a) factors, it is required to consider them, and its failure to do so constitutes reversible procedural error. *Id.*; *see also United States v. Cubero*, 754 F.3d 888, 893 (11th Cir. 2014).

Moreover, as this Court has made abundantly clear, the right of a defendant to allocute is sacrosanct; it "is the type of important safeguard that helps assure the fairness, and hence legitimacy, of the sentencing process." *United States v. Prouty*, 303 F.3d 1249, 1253 (11th Cir. 2002) (citation and internal quotation marks omitted). The right to allocution

dates back to the common law: "As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal." *Green v. United States*, 365 U.S. 301, 304 (1961). Failing to provide a defendant the opportunity to allocute before imposing sentence creates a presumption of prejudice and requires reversal – even on plain error review – of a bottom-of-the-guidelines-sentence. *See United States v. Doyle*, 857 F.3d 1115, 1120–21 (11th Cir. 2017).

This rule make sense; at the end of the day, the sentencing court must conduct an individualized analysis to ensure that the sentence it imposes is "sufficient, but not greater than necessary" under 18 U.S.C. § 3553(a); "denying [a] defendant his right to allocution [is] tantamount to denying him his most persuasive and eloquent advocate," and denies the district court "the opportunity to take into consideration the defendant's unique perspective on the circumstances relevant to his sentence, delivered by his own voice." *Prouty*, 303 F.3d at 1253 (citations omitted).

Given the importance of allocution, and the requirement that the sentencing court consider the § 3553(a) factors, it simply cannot be that a sentencing court can insulate itself from appellate review by proclaiming

23

– before hearing any argument regarding the § 3553(a) factors and before providing the accused the opportunity to allocate – that it would have imposed the same sentence anyway. That would render these important procedural safeguards meaningless, and federal sentencing hearings, the requirements of § 3553(a), and the foundational right to allocution, would become a legal fiction.

That is precisely what occurred here. If this Court allows sentencing courts to insulate a sentence before actually conducting a sentencing hearing, then what followed the district court's *Keene* proclamation here may as well have not happened at all because it has been preemptively rendered meaningless. Additionally, to allow what is a significantly above-Guidelines sentence without the explanation normally required for such sentences, fails to comport with the need "to allow for meaningful appellate review and to promote the perception of fair justice." *Gall*, 552 U.S. at 50. "Nothing could be less meaningful than labeling an error harmless so long as a district court states it would impose the same sentence in the event it erred, without also thoroughly explaining why it would do so. The exception has now swallowed the

rule." *United States v. Gomez-Jimenez*, 750 F.3d 370, 390 (4th Cir. 2014) (Gregory, J., concurring in part and dissenting in part).

It cannot be that a few magic words, said at the start of a sentencing hearing, can render the entirety of what follows irrelevant on appellate review. Even *Keene* has to have its boundaries, and they have been stretched beyond recognition here. The district court erred in announcing its *Keene* finding when it did, and it therefore cannot be used as a shield to guard against appellate review of the sentencing error raised herein.

*[SECTION LEFT BLANK INTENTIONALLY]*

## CONCLUSION

For the foregoing reasons, Mr. Green respectfully asks the Court to vacate his sentence and remand the case to the district court for resentencing.

Respectfully Submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

**_s/ Ian McDonald_**
Assistant Federal Public Defender
Attorney for Appellant Green
150 West Flagler Street, Suite 1700
Miami, Florida 33130
Telephone No. (305) 530-7000

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation and typeface requirements of Fed. R. App. P. 32(a)(7)(B), because it contains 4,785 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Century Schoolbook font.

_**s/ Ian McDonald**_

Ian McDonald
Attorney for Appellant Green
Dated:    March 27, 2023

## CERTIFICATE OF SERVICE

I HEREBY certify that on **March 27, 2023,** I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and sent four copies to the Clerk of the Court via third party commercial carrier for delivery within three days.   I also certify that the foregoing document is being served this day via CM/ECF on Lisa Tobin Rubio, Chief, Appellate Division, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132.

*s/ Ian McDonald*
Ian McDonald